IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARY LAVALLEY,

       Plaintiff,

vs.                              Civ. No. 15-763 KG/WPL

UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS d/b/a
UNIVERSITY OF NEW MEXICO HOSPITAL
and the UNITED STATES OF AMERICA,

       Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff's Renewed Motion Challenging the

Substitution of the United States for Defendants Boncher and Brennan (Renewed Motion), filed

on January 4, 2016.  (Doc. 18).  In the alternative to challenging the substitution of the United

States of America (United States), Plaintiff seeks to engage in further discovery on the

substitution issue.  The United States filed a response on January 19, 2016, opposing both the

Renewed Motion and Plaintiff's request to engage in further discovery.  (Doc. 19).  Having

reviewed the Renewed Motion, the response, and the accompanying exhibits, the Court denies

the Renewed Motion and denies Plaintiff's request for further discovery.

*A.  Background*

    *1.  Procedural History*

This is a medical malpractice lawsuit filed originally in state court against the University

of New Mexico Board of Regents d/b/a University of New Mexico Hospital (UNMH), Dr.

Nicholas Boncher, and Dr. Maire Brennan, a resident physician, under the New Mexico Tort

Claims Act (NMTCA).  (Doc. 1-2).  Plaintiff claims that the medical malpractice occurred on

November 6, 2013, when Drs. Boncher and Brennan, as UNMH employees, performed surgery on Plaintiff at the Veterans Administration Medical Center (VAMC).

Drs. Boncher and Brennan removed the case to federal court on the basis of the Federal Tort Claims Act (FTCA) and 28 U.S.C. § 2679(d)(2), known as the Westfall Act.  Notice of Removal (Doc. 1).  Under the FTCA, the United States is liable for the "negligent or wrongful act or omission of any employee of the [Federal] Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Section 2679(d)(2) states:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his [federal] office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

Drs. Boncher and Brennan attached the requisite Westfall Act Certification to the Notice of Removal stating that they were acting within the scope of their federal employment as VAMC medical doctors when they operated on Plaintiff.  (Docs. 1 and 1-1).  Drs. Boncher and Brennan then filed a Notice of Substitution indicating that by operation of law the United States is substituted for them as the appropriate Defendant.  (Doc. 3).

On September 14, 2015, Plaintiff filed Plaintiff's Motion Challenging the Substitution of the United States of America for Defendants Boncher and Brennan.  (Doc. 6).  The Court granted Plaintiff's motion in that the Court allowed the parties to conduct discovery limited to the scope

of Drs. Boncher and Brennan's employment with the VAMC.  (Doc. 12) at 4.  The Court also

permitted Plaintiff, after the end of the limited discovery, "to file a brief to present specific

evidence refuting the Certification," and the United States to file a response to Plaintiff's brief.

*Id.*

During the course of conducting the limited discovery, Plaintiff requested that the United

States produce the personnel files for Drs. Boncher and Brennan, and any risk management file

regarding Plaintiff.  *See* (Doc. 18-4) (Requests for Production 2, 5, and 11).  The United States

objected to the request for production of the personnel files as overly broad, irrelevant, and

prohibited by the Privacy Act.  Nonetheless, the United States provided Appointment Affidavits

and Notices of Personnel Action (SF-50) for both Dr. Boncher and Dr. Brennan.  The United

States also objected to the request for production of any risk management file as overly broad,

not relevant, and as privileged under 38 U.S.C. § 5705 (Confidentiality of Medical Quality-

Assurance Records).

The parties have now concluded the limited discovery and Plaintiff filed his Renewed

Motion to refute the Certification.  In the alternative, Plaintiff seeks (1) an order ruling that the

United States waived its "privilege/protection claims" with respect to the personnel and risk

management files it refused to disclose, or (2) an *in camera* review of the personnel and risk

management files to determine if they are indeed privileged or protected.  (Doc. 18) at 7-8.  The

United States contends that Plaintiff has not refuted the Certification and that any further

discovery is unwarranted.

   *2.  The Scope of Employment Evidence*

   In 2009, the University of New Mexico (UNM) School of Medicine and the VAMC

entered into a Medical Education Affiliation Agreement (Agreement).  (Doc. 18-1).  The

Agreement establishes an affiliation between the UNM School of Medicine and the VAMC "for the academic purposes of enhanced patient care, education, and research."  (Doc. 18-1) at 1.  The Agreement makes clear that while the UNM School of Medicine "accept[s] primary responsibility for the integrated education programs conducted with [the VAMC]," the VAMC "retains full responsibility for the care of VA patients and administration of it operation."  *Id.* Under the Agreement, the UNM School of Medicine selects residents for the VAMC program and participates in the supervision of those programs.  *Id.* at 3.  The VAMC, however, has the authority to dismiss residents from a VAMC assignment.  *Id.* The Agreement further states that faculty members and residents providing professional services covered by the Agreement receive protection from personal professional liability under the Westfall Act.  *Id.* at 2.

At the time of the incident at issue, Dr. Boncher worked part-time at the VAMC.  (Doc. 19-1) at ¶ 7.  As a VAMC employee, Dr. Boncher saw VAMC patients, performed surgeries at the VAMC, and trained resident physicians, including Dr. Brennan.  (Doc. 19-2) at ¶¶ 3 and 13. During the same time period, Dr. Boncher worked part-time at UNM as Director of Reconstructive Urology and as an assistant professor.  *Id.* at ¶ 4.  Dr. Boncher's salary at UNM was paid at least in part by the VAMC.  *Id.*  The VAMC's Letter of Position Offer to Dr. Boncher and the VAMC Medical Staff Bylaws also indicate that the FTCA provided personal professional liability protection to Dr. Boncher as a federal physician.  (Doc. 19-2); (Doc. 19-3) at 3-4.  While employed by the VAMC, VAMC physicians supervised Dr. Boncher; the VAMC set his work and surgery schedule; the VAMC assigned patients to Dr. Boncher;  Dr. Boncher used VAMC equipment to carry out his duties on VAMC property; the VAMC paid his salary; and Dr. Boncher enjoyed federal benefits.  (Doc. 19-2) at ¶ 9.

4

At the time of Plaintiff's surgery, the VAMC employed Dr. Brennan as a resident physician.  (Doc. 19-4) at 2, ¶¶ 4-7.  *See also* Appointment Affidavit (Doc. 19-4) at 6; Contract Letter (Doc. 19-4) at 5.  The VAMC indirectly, through a disbursement agreement with the UNM School of Medicine, paid Dr. Brennan's salary.  (Doc. 19-4) at 5.  Her residency included a six-month rotation at the VAMC and a subsequent six-month rotation at UNMH.  *Id.* at 2, ¶ 4. The VAMC Medical Staff Bylaws provide that the FTCA protects resident physicians "working under the direct supervision of VA healthcare professionals" from personal professional liability. (Doc. 19-3) at 4.  *See also* Affiliation Agreement (Doc. 19-5) at 2; Contract Letter (Doc. 19-4) at 5.  Dr. Brennan's supervisors included Dr. Boncher as well as other VAMC physicians.  (Doc. 19-4) at 3, ¶ 9.  While a VAMC employee, the VAMC set Dr. Brennan's work and surgery schedule; the VAMC assigned patients to Dr. Brennan; and Dr. Brennan used VAMC equipment to carry out her duties on VAMC property.  *Id.*  In addition, when Drs. Boncher and Brennan operated on Plaintiff, the VAMC had scheduled the surgery and Drs. Boncher and Brennan used VAMC's operating facility and equipment.  (Doc. 19-1) at ¶ 6.

*B. Discussion*

*1. The Westfall Certification*

Although the Westfall Certification is subject to *de novo* review by this Court, it is, nonetheless, *prima facie* evidence that Drs. Boncher and Brennan's alleged tortious conduct occurred within the scope of federal employment.  *See Richman v. Straley*, 48 F.3d 1139, 1145 (10th Cir. 1995).  Plaintiff "bears the burden of rebutting the scope-of-employment certification with specific facts."  *Id*. (citations omitted).  *Respondeat superior* law of the state where the tortious act occurred defines "scope of employment" under the Westfall Act.  *Id.*

Plaintiff argues that the VAMC and UNM jointly employed Drs. Boncher and Brennan so "Drs. Boncher and Brennan were acting, at least partially, in the course and scope of their employment with UNMH, thus negating the United States' contention that they were acting solely as federal employees." (Doc. 18). Plaintiff cites *Bristol v. Board of County Commissioners of Clear Creek* in support of his argument. 312 F.3d 1213 (10th Cir. 2002). *Bristol*, however, is not persuasive authority for Plaintiff's position. First, the Tenth Circuit discusses the concept of joint employment in the context of defining "employer" under the Americans with Disabilities Act. *Bristol* is obviously distinguishable from this case which focuses on a Westfall "scope of employment" Certification requiring substituting the United States as a party. Second, *Bristol* does not apply New Mexico *respondeat superior* law.

In New Mexico, "[a]n employer may be liable under the doctrine of respondeat superior for an intentional tort committed by its employee if the wrongful acts are committed in the course and scope of his or her employment." *Los Ranchitos v. Tierra Grande, Inc.*, 1993-NMCA-107, ¶ 13, 116 N.M. 222.

An act of an employee is within the scope of employment if:

1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and

2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

*Id.* at ¶ 15 (quoting UJI 13–407 NMRA 1998).

New Mexico also recognizes dual employment in which an employer lends his employee to another for a particular employment. *Weese v. Stoddard*, 1956-NMSC-117, ¶ 7, 63 N.M. 20. In that situation, the "employer is not liable for injury negligently caused by a servant if the latter

is not at the time in the service of the employer, but in the special service of another." *Id.* This concept of dual employment, however, "does not matter for purposes of *respondeat superior*," because the "employer escapes liability by demonstrating the tortfeasor was the special employee of another at the time of the negligent conduct regardless of whether the tortfeasor also remained an employee of the defendant." *Bain v. IMC Glob. Operations, Inc.*, 236 Fed. Appx. 423, 429 (10th Cir. 2007) (discussing *Weese*).  In other words, irrespective of whether the tortfeasor was a borrowed servant, the court must determine whether at the time the tort occurred the servant was acting within the scope of the employer's employment or within the scope of employment of the employer to whom he was lent.  *See, e.g., Monett v. Dona Ana Cty. Sheriff's Posse*, 1992-NMCA-096, at ¶ 15, 114 N.M. 452 ("the test for determining whose employee Carroll was turns on the answer to the question of whose work was being done at the time of the accident."); *Weese*, 1956-NMSC-117 at ¶ 7 ("the test is whether in the particular service which he is engaged to perform, the servant continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent….").  This law is consistent with cases from other jurisdictions which have held, in the context of the Westfall Act, that being "lent" to work for the federal government does not necessarily mean that the borrowed servant acted outside the scope of his federal government employment.  *See Aldridge v. Hartford Hosp.*, 969 F.Supp. 816, 821 (D. Conn. 1996).

The Court finds sufficient evidence that the surgery by Drs. Boncher and Brennan was "fairly and naturally incidental" to the duties assigned to Drs. Boncher and Brennan by the VAMC.  Furthermore, Drs. Boncher and Brennan performed the surgery while engaged in providing healthcare at the VAMC in furtherance of the VAMC's interest in delivering healthcare services.  Drs. Boncher and Brennan did not perform the surgery out of "some

external, independent and personal motive." The Court, therefore, concludes that Drs. Boncher and Brennan acted within the scope of their employment with the VAMC when they performed surgery on Plaintiff. The Court further concludes, based on the evidence before it, that Plaintiff has not rebutted the Certification with specific facts.

   2.  *Plaintiff's Request for Additional Discovery*

The Court may, in its discretion, permit limited discovery or conduct an evidentiary hearing on the question of scope of employment if the Certification, the pleadings, and Plaintiff's supporting documentary evidence reveal an issue of material fact. *See Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir.), *cert. denied*, 522 U.S. 931 (1997). Plaintiff need not specify what evidence might be obtained through discovery. *Stokes v. Cross*, 327 F.3d 1210, 1216 (D.C. Cir. 2003).

In light of the undisputed evidence adduced by the limited discovery, neither the Certification, the pleadings, nor Plaintiff's supporting documentary evidence reveal an issue of material fact. Moreover, considering the undisputed and convincing nature of the evidence already before the Court, Plaintiff's request for further discovery appears to be nothing more than a request to conduct an unwarranted fishing expedition. For these reasons, the Court denies Plaintiff's request for further discovery.

   IT IS ORDERED that

   1. Plaintiff's Renewed Motion Challenging the Substitution of the United States for Defendants Boncher and Brennan (Doc. 18) is denied; and

   2. the United States of America is substituted for Drs. Boncher and Brennan; and

3.  Plaintiff's request for further discovery regarding the substitution issue is denied.

_____

UNITED STATES DISTRICT JUDGE