IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARY LAVALLEY,

    Plaintiff,

v.                                                            No. 15-CV-00763 KG/WPL

UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS d/b/a UNIVERSITY
OF NEW MEXICO HOSPITAL, and the
UNITED STATES OF AMERICA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant University of New Mexico Board of Regents' ("UNMH") Motion to Dismiss, filed on March 24, 2016. (Doc. 23).[1] Plaintiff Cary LaValley filed a response on April 11, 2016, (Doc. 24), and UNMH filed a reply on April 28, 2016, (Doc. 25). Based on a review of the briefing, the record, and applicable law, the Court will grant in part and deny in part the motion for judgment on the pleadings.

*A. Factual & Procedural Background*

On June 2, 2015, LaValley filed a complaint in state district court in New Mexico.[2] (Doc. 1) Ex. 2. In Count I, he alleges direct claims of medical negligence against Drs. Nicholas Boncher and Maire Brennan as well as vicarious liability against UNMH through *respondeat*

---

[1] The motion is actually a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Throughout this Memorandum Opinion and Order, the Court will refer to the motion as one for judgment on the pleadings.

[2] Here, the Court presents as fact all well-pleaded allegations, viewed in the light most favorable to LaValley. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990).

*superior*. (*Id.*) at 3-4.  In Count II, LaValley brings claims for negligent hiring, credentialing, training, and supervision against UNMH.  (*Id.*) at 3-5.

On November 6, 2013, Drs. Boncher and Brennan performed a left percutaneous nephrolithotomy[3] on LaValley at the Veterans Administration Medical Center ("VAMC") in Albuquerque.  (*Id.*) at 2.  Meanwhile, Drs. Boncher and Brennan were also employees of UNMH.  (*Id.*) at 3.  LaValley experienced a "[l]arge bleed" during surgery and lost about 1,800 milliliters of blood.  (*Id.*)  Drs. Boncher and Brennan stopped the procedure before its completion.  (*Id.*)  Subsequently, LaValley suffered from significant vision loss in his right eye due to damage to his cranial nerve during the surgery.  (*Id.*)

On August 28, 2015, the United States, acting on behalf of Drs. Boncher and Brennan, filed a notice of removal of the case to federal district court pursuant to 28 U.S.C. § 2679(d)(2).  (Doc. 1).  The United States Attorney for the District of New Mexico certified that Drs. Boncher and Brennan were acting in the course and scope of their employment as medical doctors for the VAMC when they performed surgery on LaValley and that they are therefore deemed employees of the United States.  (Doc. 1) Ex. 1.

On August 31, 2015, the United States filed a Notice of Substitution, substituting itself for Drs. Boncher and Brennan in accordance with the Federal Tort Claims Act ("FTCA"), as amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988.  (Doc. 3) at 1-2.  In a Memorandum Opinion and Order dated March 10, 2016, this Court resolved a challenge by LaValley to the United States' substitution, determining that the United States was the proper Defendant.  (Doc. 20) at 8.  The Court concluded Drs. Boncher and Brennan acted

---

[3] A percutaneous nephrolithotomy is a "minimally invasive medical procedure whereby kidney stones are removed through a small puncture wound." (Doc. 23) at 2 n.1.

within the scope of their employment with the VAMC when they performed surgery on LaValley. (*Id.*) at 8.

*B. Standard of Review*

A Rule 12(c) motion for judgment on the pleadings uses the same standard of review that applies to a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See, e.g.*, *Adams v. Jones*, 577 F. App'x 778, 781-82 (10th Cir. 2014). In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon*, 494 U.S. at 118; *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

*C. Discussion*

 *1. Parties' Arguments*

UNMH argues first in its motion that the Court should dismiss LaValley's vicarious liability claims against it for medical negligence based on the Court's finding that Drs. Boncher and Brennan were acting as federal employees when performing LaValley's surgery. LaValley

does not address this argument in his response.

Next, UNMH argues that the Court should dismiss the negligent hiring, credentialing, training, and supervision claims against UNMH because the NMTCA has not waived sovereign immunity for such torts. [4] UNMH notes that LaValley asserts in his complaint that NMSA 1978, § 41-4-10 (Repl. Pamp. 1996), waives sovereign immunity for LaValley's claims in Count II. Section 41-4-10 excludes from immunity:

> liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees licensed by the state or permitted by law to provide health care services while acting within the scope of their duties of providing health care services.

However, UNMH contends that New Mexico courts construe the term "provide health care services" narrowly and that "simple decision making" by public employees does not constitute the provision of health care services. (Doc. 23) at 13. Rather, UNMH argues New Mexico courts generally interpret waiver of immunity under Section 41-4-10 to encompass curative and palliative care of the body by health care providers. UNMH also points out that no reported case in New Mexico has held that hiring or credentialing by a public hospital constitutes "providing health care services" under Section 41-4-10. UNMH argues that the Court should dismiss Count II of the Complaint because the alleged torts do not constitute providing health care under Section 41-4-10.

LaValley responds that NMSA 1978, § 41-4-9 (Repl. Pamp. 1996), of the NMTCA applies as well. Section 41-4-9 provides:

---

[4] NMSA 1978, § 41-4-4(A) (Cum. Supp. 2015), grants tort immunity as follows: "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for an tort except as waived by the New Mexico Religion Freedom Restoration Act and by Section 41-4-5. Waiver of this immunity shall be limited to and governed by the provisions of Section 41-4-13, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act."

> [t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any hospital, infirmary, mental institution, clinic, dispensary, medical care home or like facilities.

LaValley argues that the Court should interpret Sections 41-4-9 and 41-4-10 to include immunity for the acts in Count II in order to escape the "absurd result" of waiver of immunity for medical negligence but not for negligent conduct that directly results in medical negligence. (Doc. 24) at 1. LaValley agrees with UNMH that New Mexico courts have not expressly considered waiver of immunity under Sections 41-4-9 and 41-4-10 for negligent hiring, credentialing, training, and supervision. However, LaValley argues that the Court should extend *Ortiz v. New Mexico State Police*, 1991-NMCA-031, 814 P.2d 117, to waive immunity for negligent staffing, training, supervising, and hiring of medical staff under Sections 41-4-9 and 41-4-10.[5] As to Section 41-4-9, LaValley contends that UNMH made no attempt to argue that it is anything other than a "hospital," or that those responsible for hiring, credentialing, training, and supervising Drs. Boncher and Brennan were not public employees. With regard to Section 41-4-10, LaValley argues that medical negligence and hiring, credentialing, training, and supervision of medical personnel are so interrelated that permitting waiver of immunity as to medical negligence but not as to the latter would be an absurd and unreasonable interpretation of the statute.

UNMH replies that LaValley did not respond to its request for dismissal of Count I, and as a result, UNMH argues, Count I is abandoned. Alternatively, UNMH contends that dismissal

---

[5] *Ortiz* deals with Section 41-4-12, which provides that "[t]he immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

with prejudice is proper on the merits because the Court substituted the United States for Drs. Boncher and Brennan, thus eliminating vicarious liability claims against UNMH, and there are no allegations that UNMH had control over surgery operations at the VAMC.

Regarding waiver of immunity under Sections 41-4-9 and 41-4-10, UNMH maintains that *Ortiz* "did not announce a broad principle that the NMTCA implicitly waives immunity for supervisory torts in all cases. Nor did *Ortiz* base its ruling, as Plaintiff suggests, on some general public policy concern that 'it simply does not make sense' not to waive state sovereign immunity for supervisory torts." (Doc. 25) at 3. Rather, as UNMH discusses, the court in *Ortiz* based its decision on the specific language of Section 41-4-12, which waives sovereign immunity for injuries "caused by" a law enforcement officer.

With respect to Section 41-4-9, UNMH points out that LaValley did not include in his complaint this section for purposes of waiver of immunity. Rather, LaValley only cited Section 41-4-10 as a basis for waiver. (Doc. 1) Ex. 2 at ¶ 8. Nonetheless, UNMH responds to LaValley's assertions of a Section 41-4-9 waiver in the briefing. First, UNMH maintains that LaValley provided no authority for the proposition that the torts alleged in Count II constitute "operation" of a hospital and that New Mexico courts construe the term "operation" narrowly, excluding from immunity torts arising from everyday decisionmaking, particularly administrative or policymaking decisions. UNMH argues that Section 41-4-9 waives immunity for injuries that are a direct result of clinical decisions made by public employees and that the decisions regarding hiring, credentialing, training, and supervision are too attenuated from patient care to be considered the direct cause of LaValley's injuries. Further, UNMH asserts that LaValley cannot show that any decision by it was the proximate cause of his injuries, as the VAMC retained independent responsibility of its operations.

As to Section 41-4-10, UNMH argues that LaValley has made no attempt to explain how the supervisory torts in Count II constitute "providing health care" under Section 41-4-10. Again, UNMH contends that the NMTCA generally waives immunity only for injuries caused directly by the negligence of public employees, not for the supervisory torts alleged in Count II.

Finally, UNMH attempts to add a new argument for dismissal of Count II based on LaValley's purported failure to allege sufficient facts to support his supervisory tort claims. Specifically, UNMH asserts that LaValley makes conclusory statements that UNMH chose not to adequately investigate, train, or supervise Drs. Boncher and Brennan.

  2. *Analysis*

   a. *Count I Vicarious Liability*

The Court first addresses LaValley's Count I vicarious liability claim against UNMH for medical negligence. The Court notes that LaValley did not respond to UNMH's request for dismissal of this claim. Therefore, the Court deems the vicarious liability claim against UNMH abandoned and will dismiss the claim with prejudice. *See, e.g.*, *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992) (stating failure to rebut defendants' arguments for summary judgment is fatal to plaintiff's claim).

   b. *Count II Waiver of Immunity Under Sections 41-4-9 or 41-4-10*

In general, "[a]n individual or entity may be held liable in tort for negligent hiring, negligent supervision, or negligent retention of an employee even though it is not responsible for the wrongful acts of the employee under the doctrine of respondeat superior." *Los Ranchitos v. Tierra Grande, Inc.*, 1993-NMCA-107, ¶ 19, 861 P.2d 263, 269. "It must be the negligent hiring or retention of an employee that becomes the '[proximate] cause' that sets in motion the circumstances leading to the injury." *Ovecka v. Burlington N. S.F. Ry. Co.*, 2008-NMCA-140, ¶

29, 194 P.3d 728, 736-37 (citing *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo. Ct. App. 1983)).

With regard to Sections 41-4-9 and 41-4-10, New Mexico courts have declined to find broad waivers of immunity for hiring or supervisory actions.  For example, the New Mexico Court of Appeals determined that neither the decision of a medical investigator to perform an autopsy nor a social worker's placement of a child in a foster home constitutes the provision of health care services.  *Begay v. State*, 1985-NMCA-117, 723 P.2d 252, 256, *rev'd sub nom. on other grounds*, *Smialek v. Begay*, 1986-NMSC-049, 721 P.2d 1306; *Whitley v. New Mexico Children, Youth & Families Dep't*, 184 F. Supp. 2d 1146, 1165 (D.N.M. 2001) (citing *M.D.R. v. State ex rel. Human Servs. Dep't*, 1992-NMCA-082, 836 P.2d 106)).  Rather, the New Mexico Court of Appeals has adopted the Wyoming Supreme Court's definition of "health care providers" with respect to providing health care services under § 41-4-10.  That court found that "health care providers" are limited to those "who cure[] or prevent[] impairments of the normal state of the body."  *M.D.R.*, 836 P.2d at 109.  Likewise, the New Mexico Court of Appeals has found that neither a social worker's placement of a child in a foster home nor  funding decisions by a county constitute the operation of a hospital or "like facility" under 41-4-9.  *Whitley*, 184 F. Supp. 2d at 1165; *Gallegos v. Trujillo*, 1992-NMCA-090, 839 P.2d 645, 649 ("[T]his court has narrowly construed the term "operation" as used in the Tort Claims Act.").  The New Mexico Court of Appeals also held that an agency's regulation of a mental health facility did not constitute "operation" under Section 41-4-9 where the agency did not make actual clinical decisions and, therefore, no waiver of immunity applied.  *Armijo v. Dep't of Health & Env't*, 1989-NMCA-043, 775 P.2d 1333, 1335.

In contrast, in *Ortiz v. New Mexico State Police*, the plaintiff sued state police officers on

the theory that their negligent hiring, training, and supervision of subordinates caused his false arrest, assault, battery, and malicious prosecution.  1991-NMCA-031, 814 P.2d 117, 118.  The New Mexico Court of Appeals noted that

> [s]everal decisions by the New Mexico Supreme Court make clear that a law enforcement officer need not personally commit a listed tort for the officer's conduct to come within the waiver of Section 41-4-12.  It suffices that the law enforcement officer, while acting within the scope of duty, negligently or intentionally causes the commission of a listed tort by another person.

*Id.* at 119.  The court emphasized that a law enforcement officer who negligently causes another law enforcement officer to commit one of the enumerated torts in the statute waives immunity under Section 41-4-12.  *Id.*

The Court finds *Ortiz* not dispositive of the issue raised here.  The language in *Ortiz* specifically applies to law enforcement officers causing another to commit one of the enumerated torts while the law enforcement officer is acting within his scope of duty.  While *Ortiz* waived immunity for negligent hiring, training, and supervision in these circumstances under Section 41-4-12, the court left unclear whether waiver of immunity for negligent hiring, training, supervision, or credentialing would apply to other exceptions to immunity under the NMTCA.

In *Silva v. State*, the plaintiff brought an action for the wrongful death of Silva, who committed suicide while incarcerated.  1987-NMSC-107, 745 P.2d 380, 381.  Among the defendants was the Secretary of Corrections, who allegedly failed to operate by certain standards and procedures required in a consent decree.  *Id.* at 381.  These standards and procedures involved staffing, training, and provision of facilities that would have assisted Silva with mental health care and would have placed him on suicide watch.  *Id.* at 381-82.  The Court found that four exceptions to tort immunity, including Sections 41-4-9 and 41-4-10, might apply.  *Id.* at

9

385-86.  Specifically, the court held "only that [the Secretary's] management and enforcement duties may be found to have included staffing, training and provision for facilities which would have provided Silva a course of treatment, health care and protection to address the mental disorder undergirding his basic prison classification." *Id.* at 386.  The Court remanded the case to district court for further proceedings.  *Id.*  In a later case, the New Mexico Supreme Court limited the holding in *Silva* by pointing out that it provided "no generally applicable principle" and that immunity "*might*" be waived under certain exceptions to immunity under the NMTCA.  *Archibeque v. Moya*, 1993-NMSC-079, 866 P.2d 344, 349.  The Court explained that its holding in *Silva* "required the finder of fact to determine whether the Secretary breached duties related to any one of the . . . waiver provisions . . . following further factual development at trial." *Id.*  Notably, the Court limited its holding in *Silva* to the specific facts.  *Id.*

      This Court concludes *Silva* is more indicative of the New Mexico Supreme Court's probable position on waiver of immunity for negligent hiring, credentialing, training, and supervision because it expressly recognized the potential for waiver of immunity with respect to such torts in the Section 41-4-9 context, albeit requiring further factual development by the fact finder regarding potential breaches of duty by the Secretary.  Although *Archibeque* limited *Silva* to its facts, the facts in *Silva* and the instant case are sufficiently similar in that they both deal with entities charged with hiring employees responsible for the wellbeing of patients.  Further, while *Silva* also listed Section 41-4-10 as a possible provision for waiver of immunity for negligent staffing, training, and provision for facilities, *M.D.R.*, later limited immunity for "health care services" under the statute to the curing or prevention of impairments of the body.

      Based on the definition of health care providers adopted by the New Mexico Court of Appeals and the narrow interpretation of Section 41-4-10, this Court finds that waiver of

immunity under this statute does not apply to negligent hiring, credentialing, training, and supervision claims against UNMH in Count II.  Specifically, such activities by UNMH do not cure or prevent impairment.  In contrast, as to Section 41-4-9, hiring, credentialing, training, and supervision may constitute operation of a hospital because such activities may be characterized as clinical decisions, as opposed to, for example, regulations.  Therefore, the Court considers Section 41-4-9, not Section 41-4-10, to provide a possible means for waiver of immunity for Count II.  The Court will thus deny UNMH's motion to dismiss Count II based on immunity under the NMTCA.

As noted by UNMH, LaValley did not include Section 41-4-9 as a possible basis for waiver of immunity in his Complaint.  The Court will allow LaValley leave to amend the Complaint to include this basis for waiver of immunity.  LaValley shall have until **30 days after the entry of this Order** to amend his Complaint to make only the described amendment.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

    *c. Failure to Allege Sufficient Facts in Count II*

The Court declines to address UNMH's argument presented for the first time in its reply that LaValley failed to allege sufficient facts to support his supervisory tort claims in Count II.  The briefing lacks adequate argument, and LaValley has not had an opportunity to respond to the new argument.  *See, e.g.*, *JL v. New Mexico Dep't of Health*, No. 12-CV-1145 MV, 2016 WL 1169303, at *10 (D.N.M. Mar. 4, 2016) (unpublished) ("[Party] cannot raise new arguments on Reply if it would prejudice [opponent] to not have an opportunity to respond."); *Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys., II, LLC*, No. 15-CV-9596-DDC-JPO, 2016 WL 3541732, at *6 (D. Kan. July 29, 2016) (unpublished) ("Generally, our

court will not address arguments raised in a reply brief."); *Owens v. Nationstar Mortg. LLC*, No. 14-CV-01434-PAB-KLM, 2015 WL 1345536, at *3 n.3 (D. Colo. Mar. 23, 2015) (unpublished) ("The Court declines to consider Nationstar's new argument on reply.").

D. *Conclusion*

Based on the foregoing, the Court grants in part and denies in part UNMH's motion for judgment on the pleadings. (Doc. 23). The Court dismisses with prejudice LaValley's Count I vicarious liability claim against UNMH and provides LaValley leave to amend his Complaint until **30 days after the entry of this Order** to include Section 41-4-9 grounds for waiver of immunity under the NMTCA.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE